UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| WESTLEY LAWRENCE MAHAN, <br> Plaintiff, <br> v. <br> CAROLYN COLVIN, Acting Commissioner of Social Security, <br> Defendant. | Case No. SA CV 13-00938-DFM <br><br> MEMORANDUM OPINION AND ORDER |

Plaintiff Westley Mahan ("Plaintiff") appeals the Commissioner's decision denying his application for disability insurance benefits. On appeal, the Court concludes that the Administrative Law Judge ("ALJ") did not err by excluding Plaintiff's sleep apnea as a severe impairment. The ALJ also gave specific, clear, and convincing reasons for discrediting Plaintiff's testimony and properly weighed the opinion of Plaintiff's chiropractor. Therefore, the ALJ's decision is affirmed and the matter is dismissed with prejudice.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed an application for disability insurance benefits alleging disability beginning on October 18, 2007. After a hearing at which Plaintiff

1  testified, the ALJ found that Plaintiff had the severe impairments of
2  degenerative disc disease of the lumbar spine, coronary artery disease, and
3  obesity. Administrative Record ("AR") 21.  The ALJ found that Plaintiff had
4  the residual functional capacity ("RFC") to perform sedentary work with
5  several additional limitations. AR 26. In making this finding, the ALJ
6  discredited in part Plaintiff's allegations regarding the severity of his
7  symptoms. AR 29-30. The ALJ also gave little weight to the opinions of
8  Plaintiff's chiropractor. AR 29. The ALJ then concluded, based upon the
9  testimony of a vocational expert ("VE"), that Plaintiff's additional limitations
10 would not prevent him from a full range of sedentary work. AR 31. The ALJ
11 then concluded that Plaintiff was capable of making a successful adjustment to
12 other work that exists in significant numbers in the national economy. Id.

## II.
## ISSUES PRESENTED

The parties dispute whether the ALJ erred in: (1) not considering whether Plaintiff's sleep apnea was a severe impairment at step two of the sequential evaluation process; (2) negatively assessing Plaintiff's credibility; and (3) failing to give controlling weight to the opinion of Plaintiff's treating chiropractor. See Plaintiff's Memorandum in Support of Complaint ("Plaintiff's Memorandum") at 6-17; Defendant's Memorandum in Support of Answer ("Defendant's Memorandum") at 4-19.

## III.
## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free from legal error and are supported by substantial evidence based on the record as a whole. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d

742, 746 (9th Cir. 2007). Substantial evidence means such relevant evidence as a reasonable person might accept as adequate to support a conclusion. Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla, but less than a preponderance. Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1996). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Id. at 720-21.

## IV.

## DISCUSSION

### A. The ALJ Properly Determined That Plaintiff's Sleep Apnea Was Not a Severe Impairment

Plaintiff contends that the ALJ erred in failing to find, at step two of the sequential evaluation process, that his obstructive sleep apnea was a severe impairment. Plaintiff's Memorandum at 6-7.[1] The existence of a severe impairment is demonstrated when the evidence establishes that an impairment has more than a minimal effect on an individual's ability to perform basic work activities. Webb v. Barnhart, 433 F.3d 683, 686-87 (9th Cir. 2005); Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); 20 C.F.R. § 404.1521(a). The

---

[1] Obstructive sleep apnea is a condition in which the flow of air pauses or decreases during breathing while a person is asleep because the airway has become narrow, blocked, or floppy. <http://www.nlm.nih.gov/medlineplus/ency/article/000811.htm>.

regulations define "basic work activities" as "the abilities and aptitudes necessary to do most jobs," which include physical functions such as walking, standing, sitting, pushing, and carrying; seeing, hearing and speaking; understanding and remembering simple instructions; responding appropriately in a work setting; and dealing with changes in a work setting. 20 C.F.R. § 404.1521(b). The inquiry at this stage is "a de minimis screening device to dispose of groundless claims." Smolen, 80 F.3d at 1290 (citing Bowen v. Yuckert, 482 U.S. 137, 153-54 (1987)). An impairment is not severe only if it is a slight abnormality with "no more than a minimal effect on an individual's ability to work." See SSR 85-28, 1985 WL 56856, at *3 (1985); Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988). A "finding of no disability at step two" may only be affirmed where there is a "total absence of objective evidence of severe medical impairment." Webb, 433 F.3d at 688 (reversing a step two determination "because there was not substantial evidence to show that [the claimant's] claim was 'groundless'").

     Here, Plaintiff has not offered sufficient evidence to demonstrate that his sleep apnea has more than a minimal effect on his ability to perform work-related functions. Although Plaintiff was diagnosed with obstructive sleep apnea in May 2011, AR 492-95, a mere diagnosis does not establish a severe impairment. Stoddard v. Astrue, No. 08-0994, 2009 WL 2030349. at *11 (C.D. Cal. July 8, 2009) ("[T]he mere diagnosis of a disorder, without more, is not sufficient to show the existence of a severe impairment.") (citing Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997)). The medical records regarding Plaintiff's sleep apnea provide diagnoses and results; they do not state any specific limitations.

     If Plaintiff believed his sleep apnea negatively affected his ability to work, he bore the burden of providing supporting medical documentation. As noted by the Commissioner, Plaintiff never alleged that he was disabled due

to sleep apnea, alleging instead that he was disabled due to lower lumbar back injury, congestive heart failure, depression, and nerve damage to his right foot. See AR 73, 86, 164. Nor does his testimony at the administrative hearing establish any functional limitations caused by his sleep apnea. Although he testified that he had difficulty falling asleep and would often wake during the night, it appears that this was primarily due to pain, rather than to the sleep apnea. See AR 62 ("I wake up in pain."). In addition, there is some evidence that Plaintiff's sleep apnea could be successfully controlled by use of a CPAP machine at night.[2] In response to a question by the ALJ, Plaintiff testified that the CPAP machine was "not really" helping much, but he also admitted that he was "still trying to get used to it." AR 62. Thus, there was no evidence in the medical record that Plaintiff's sleep apnea was sufficiently severe to affect his ability to perform work-related functions.

Although the threshold required to show that an impairment is severe at step two is "minimal," Plaintiff has not met his burden of showing that his sleep apnea was sufficiently severe to negatively affect his ability to perform work-related functions. Accordingly, the ALJ did not err in failing to find Plaintiff's sleep apnea to be a severe impairment at step two of the sequential evaluation process.

B.  **The ALJ Properly Assessed Plaintiff's Credibility**

Plaintiff contends that the ALJ erred by failing to provide clear and convincing reasons for discounting his subjective symptom testimony. Plaintiff's Memorandum at 7-12. Plaintiff testified that he suffers from back pain that radiates down both legs, numbness in the right foot, right heel pain,

---

[2] CPAP, or continuous positive airway pressure, is a treatment that uses mild air pressure to keep the airways open. <https://www.nhlbi.nih.gov/health/health-topics/topics/cpap/#>.

fatigue, and problems sleeping. AR 59-62. He testified that his back pain is caused by prolonged sitting, standing, walking, or lying down. AR 63. He also testified that he is depressed and forgetful. AR 64.

To determine whether a claimant's testimony about subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009) (citing Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the alleged pain or other symptoms. Lingenfelter, 504 F.3d at 1036. "[O]nce the claimant produces objective medical evidence of an underlying impairment, an adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc). To the extent that an individual's claims of functional limitations and restrictions due to alleged pain are reasonably consistent with the objective medical evidence and other evidence, the claimant's allegations will be credited. SSR 96-7p, 1996 WL 374186 at *2 (explaining 20 C.F.R. § 404.1529(c)(4)).

If the claimant meets the first step and there is no affirmative evidence of malingering, the ALJ must provide specific, clear and convincing reasons for discrediting a claimant's complaints. Robbins, 466 F.3d at 883. "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Reddick, 157 F.3d at 722 (quoting Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996)). The ALJ must consider a claimant's work record, observations of medical providers and third parties with knowledge of claimant's limitations, aggravating factors, functional restrictions caused by symptoms, effects of medication, and the claimant's daily activities. Smolen, 80 F.3d at 1283-84 &

n.8. The ALJ may also consider an unexplained failure to seek treatment or follow a prescribed course of treatment and employ other ordinary techniques of credibility evaluation. Id.

The Court finds that the ALJ gave specific, clear, and convincing reasons for finding that Plaintiff's subjective testimony was not entirely credible, each of which is fully supported by the record. First, the ALJ noted that, despite Plaintiff's complaints of debilitating pain, he was able to perform certain daily activities, such as cooking, light chores, independently handling his personal care, driving, and managing his finances. AR 29. While it is true that "one does not need to be 'utterly incapacitated' in order to be disabled," Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001), the extent of Plaintiff's activity here supports the ALJ's finding that Plaintiff's reports of his impairment were not fully credible. See Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1227 (9th Cir. 2009); Curry v. Sullivan, 925 F.2d 1127, 1130 (9th Cir. 1990) (finding that the claimant's ability to "take care of her personal needs, prepare easy meals, do light housework and shop for some groceries ... may be seen as inconsistent with the presence of a condition which would preclude all work activity") (citing Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989)).

Second, the ALJ determined that Plaintiff was not fully credible because he made conflicting statements regarding his educational level and marital status. AR 30. As noted by the ALJ, Plaintiff stated in his initial disability application that he had a fifth grade education, see AR 165, but he told his neurological surgeon that he had a high school education. AR 288. Other medical providers note that Plaintiff stated he has a fifth grade or sixth grade education. AR 402, 445. At the administrative hearing, Plaintiff testified that he has an eighth grade education. AR 68. Plaintiff also made conflicting statements regarding his marital status. In his initial disability application

dated April 16, 2010, Plaintiff stated that he was married to Karina Croxtin and had been since October 2001. AR 30 (citing AR 137). However, in a June 17, 2008 clinical note, Plaintiff stated that he was divorced and living with his fiancé Cindy. AR 288. On April 13, 2010, Plaintiff stated that he was married in 2000 but has been separated since 2005. AR 445. At the administrative hearing, Plaintiff testified that he was currently living with his girlfriend. AR 59, 65-67.[3] Although Plaintiff contends these inconsistencies are "minor" and "trivial," the ALJ was nevertheless entitled to consider them when assessing Plaintiff's credibility. See Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012); Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002).

Third, the ALJ found that Plaintiff's heart condition appeared to be improving, which undermined his claims of disabling pain and symptoms. AR 29.[4] The ALJ noted that, despite Plaintiff's contention that he suffers from congestive heart failure, his heart ejection fraction had significantly improved from a low of 30% to approximately 45 to 48% due to his daily medication.[5]

---

[3] Plaintiff also made inconsistent statements regarding the number of children he has. He testified at the administrative hearing that he has a 22-year-old daughter and no other children, AR 58-59, but at other times he apparently stated that he has two children. See AR 402, 445. However, because the ALJ did not discuss these inconsistent statements in evaluating Plaintiff's credibility, the Court does not consider them in determining whether the ALJ's credibility determination was supported by substantial evidence.

[4] The ALJ persuasively linked Plaintiff's heart condition to his complaints of pain by explaining that Plaintiff alleges "that he is suffering from congestive heart failure to the point he cannot undergo surgery for his lumbar spine." AR 29.

[5] Ejection fraction measures the percentage of blood leaving the heart each time it contracts. An ejection fraction of 55% or higher is considered normal, while 40 to 55% is below normal. An ejection fraction below 40% may confirm diagnosis of heart failure. <http://www.mayoclinic.org/ejection-

This improvement was repeatedly noted by Plaintiff's treating cardiologist, Dr. Mahaveer Khemka, M.D. See AR 366, 368-69, 372, 374, 378-80, 392, 430, 433. Furthermore, the medical records indicate that Plaintiff's ejection fraction had reached a normal level of 58% by July 2009. See AR 319, 326. See Warre v. Comm'r Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for [disability] benefits.").

     Finally, the ALJ considered that Plaintiff's claims of disabling pain were unsupported by the medical evidence. After extensively reviewing the medical record, the ALJ concluded that the medical evidence generally showed unremarkable examinations and few abnormal findings. AR 27-29. The findings of the consultative examining physician, Dr. Concepcion Enriquez, were also largely normal and unremarkable, and Dr. Enriquez determined that Plaintiff was capable of performing a full range of light work. AR 356-60. The testifying medical expert, Dr. Samuel Landau, upon whose opinion the ALJ relied in assessing Plaintiff's RFC, determined that Plaintiff was capable of performing sedentary work with some standing and walking limitations. AR 28 (citing AR 51-52). "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

     On appellate review, this Court does not reweigh the hearing evidence regarding Plaintiff's credibility. Rather, this Court is limited to determining whether the ALJ properly identified specific, clear, and convincing reasons for discrediting Plaintiff's credibility. Smolen, 80 F.3d at 1284. The written record reflects that the ALJ did just that. As previously noted, it is the responsibility of

---

fraction/expert-answers/faq-20058286>.

the ALJ to determine credibility and resolve conflicts or ambiguities in the evidence. Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989). If the ALJ's findings are supported by substantial evidence, this Court may not engage in second-guessing. See Thomas, 278 F.3d at 959; Fair, 885 F.2d at 604.

**C.    The ALJ Gave Proper Weight to the Opinion of Plaintiff's Treating Chiropractor**

Plaintiff contends that the ALJ erred in failing to give controlling weight to the opinion of Plaintiff's treating chiropractor, Dr. Robbrey Rattray. Plaintiff's Memorandum at 12-17. Dr. Rattray had been treating Plaintiff for degenerative disc disease of the lumbar spine since October 2007. AR 345. On September 14, 2011, Dr. Rattray completed a physical capacities evaluation in which he provided the following opinions: Plaintiff could only sit for one hour at a time for no more than three hours of an eight-hour workday; he could only stand and/or walk for one hour in an eight-hour workday; he could not push, pull, or reach with his upper extremities; and his impairments would significantly inhibit his ability to hold employment. AR 565. The ALJ rejected Dr. Rattray's opinion as "too limiting and not fully consistent with the objective medical evidence of record." AR 29.

An ALJ should generally give more weight to a treating physician's opinion than to opinions from non-treating sources. See 20 C.F.R. § 404.1527(d)(2); Lester, 81 F.3d at 830. However, under the Social Security Regulations, a chiropractor is not an "acceptable medical source." 20 C.F.R. § 404.1513(a). Rather, a chiropractor is included in the list of medical professionals defined as "other sources." 20 C.F.R. § 404.1513(d)(1). Although their opinions may be used to determine the severity of a claimant's impairments and how those impairments affect the ability to work, 20 C.F.R. § 404.1513(d), such professionals are not considered to be the equivalent of

10

treating physicians. See Jamerson v. Chater, 112 F.3d 1064, 1067 (9th Cir. 1997). To reject the testimony of other nonacceptable medical sources, the ALJ must only give "reasons germane to each witness for doing so." Molina, 674 F.3d at 1111 (quoting Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1224 (9th Cir. 2010)).

Here, the ALJ gave a valid reason for discounting Dr. Rattray's opinion, namely, that it was inconsistent with the other medical evidence of record. AR 29. See Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005) ("Inconsistency with medical evidence" is a "germane reason[] for discrediting the testimony of lay witnesses.") (citing Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001)). The ALJ determined that Dr. Rattray's finding of extreme functional limitations was inconsistent with the opinions of the examining physician, the testifying medical expert, and the State Agency reviewing physician. AR 28. For example, the consultative examining physician determined that Plaintiff was capable of lifting and carrying 20 pounds occasionally and 10 pounds frequently; sitting, standing, and walking six hours out of an eight-hour work day; and frequently bending, stooping, and twisting. AR 28 (citing AR 356-60). Dr. Landau, the testifying medical expert, determined that Plaintiff was capable of performing sedentary work with standing and walking limited to no more than two hours out of an eight-hour day. AR 28 (citing AR 51-52). Finally, the reviewing physician, Dr. J. Berry, concluded that Plaintiff was capable of a range of light work with some postural limitations. AR 393-98.

Because the ALJ determined that the opinion of Dr. Rattray, a nonacceptable medical source, was contradicted by the opinions of three acceptable medical sources, he therefore properly declined to give it any significant weight. See Paulson v. Astrue, 368 F. App'x 758, 760 (9th Cir. 2010) (holding that ALJ did not err in failing to consider the opinion of the

claimant's treating chiropractor because the opinion was contradicted by the opinions of acceptable medical sources, which are entitled to greater weight) (citing 20 C.F.R. § 404.1513(d)(1); SSR 06-3p ("The fact that a medical opinion is from an 'acceptable medical source' is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an 'acceptable medical source' because ... 'acceptable medical sources' 'are the most qualified health care professionals.'")). Accordingly, the ALJ did not err in assessing the opinion of Plaintiff's treating chiropractor, and Plaintiff is therefore not entitled to relief on this claim of error.

## V.
## CONCLUSION

For the reasons stated above, the decision of the Social Security Commissioner is AFFIRMED and the action is DISMISSED with prejudice.

Dated: May 12, 2014

_____
DOUGLAS F. McCORMICK
United States Magistrate Judge